## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

BETTY JOHNSON,

      Plaintiff,

          v.

G4S SECURE SOLUTIONS USA,
ALLIED UNIVERSAL SECURITY
SERVICES, and UNIVERSAL
PROTECTION SERVICE, LLC,

      Defendants.

No. 23-cv-14605

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

Plaintiff Betty Johnson, a former security guard, sued Defendants Allied Universal Security Services LLC, G4S Secure Solutions USA, and Universal Protection Service LLC for their alleged discriminatory conduct during her employment. When Defendants failed to appear to defend the case, the Court entered a finding of default. Plaintiff then sought a default judgment, which the Court entered after holding a hearing on damages. When Plaintiff sought to collect on her judgment, Defendants finally appeared and now seek to vacate the default judgment. (Dkt. 70.)

In a written motion, Defendants contend that their inattention to the case was excusable. According to Defendants, two members of the Allied Universal legal department were aware of the lawsuit and attempted to engage outside counsel. But an unspecified technical glitch deleted the emails they sent to the law firm they selected. Allied Universal's staff took no further steps until this motion.

For the reasons that follow, Defendants' motion to vacate is unpersuasive. Although the circumstances presented by Defendants are unfortunate, they do not establish the type of excusable neglect that is ordinarily required before a court may disrupt a final judgment. Having been made aware of the case, Defendants owed a duty of diligence in ensuring that they made contact with their outside counsel. Their failure to meet that duty means that the judgment must remain in place.

## I.     BACKGROUND

The procedural history of this case is straightforward. Defendants were served with process on November 8, 2023 (Dkt. 36; Dkt. 37; Dkt. 38; Dkt. 39; Dkt. 40; Dkt. 41) but did not respond to the complaint. Plaintiff moved for entry of default on June 7, 2024. (Dkt. 43.) Plaintiff represented that notice of the motion was provided to Defendants. (*Id*. ¶ 5.) After the Court entered a default against all Defendants, Plaintiff moved for default judgment, which the Court granted. (Dkt. 45; Dkt. 65.) Plaintiff likewise certified that the motion for default judgment was served upon Defendants by mail. (Dkt. 45 at 12.) After conducting a prove-up hearing on damages, the Court entered judgment on December 27, 2024. That judgment awarded Plaintiff $92,141.95 in back pay and liquidated damages and $75,000 in emotional damages. (Dkt. 66.)

Defendants explain in their motion that Allied Universal received the Summons and Complaint and forwarded the materials in an email to its outside counsel at the law firm of Martenson, Hasbrouck & Simon LLP ("MHS"). In the email, the Allied Universal employee asked MHS to assign the lawsuit to an attorney. (*Id*.)

MHS states that its email system never received the message. (Dkt. 70-2 ¶¶ 7–8.) Allied Universal employees sent two follow-up emails to no avail. (Dkt. 70-1 ¶¶ 9–10; Dkt. 70-2 ¶¶ 7–8.) Defendants state that they did not learn of the case or the judgment against them until they received a letter from Plaintiff's counsel on July 15, 2025 demanding payment in accordance with the judgment. (Dkt. 70 at 2.) On July 25, 2025, Defendants filed the pending motion to vacate the default judgment. (Dkt. 70.)

## II. LEGAL STANDARD

Rule 60(b) of the Federal Rules of Civil Procedure provides that a court may grant relief from a final judgment under exceptional circumstances. District courts' latitude in making this decision amounts to "discretion piled on discretion." *Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012) (citing *Swaim v. Moltan Co.*, 73 F.3d 711, 722 (7th Cir. 1996)). Rule 60(b)(1) permits relief from judgment on ground of "mistake, inadvertence, surprise, or excusable neglect." *Easley v. Kirmsee*, 382 F.3d 693, 697 (7th Cir. 2004). To receive relief, defendants bear the burden of establishing: "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Wehrs*, 688 F.3d at 890. This test "establishes a high hurdle for parties seeking to avoid default judgments and requires something more compelling than ordinary lapses of diligence or simple neglect to justify disturbing a default judgment." *Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994).

## III. DISCUSSION

Defendants' motion does not clear the "high hurdle" for parties that seek to undo a default judgment. In making this finding, the Court assumes both that

Defendants have demonstrated quick action upon learning of the default judgment and that they possess a meritorious defense to the complaint. (*See* Dkt. 70 at 6–7; Dkt. 78 at 5–6.) And the Court is sympathetic to the unfortunate circumstances that led to the failure of Defendants to engage with the case in a timely way. But sympathy does not equate to excusable neglect or good cause, and on this record, Defendants cannot establish "something more compelling than ordinary lapses of diligence or simple neglect." *Jones*, 39 F.3d at 162.

By Defendants' own admission, two members of the Allied Universal legal department were notified of the pending litigation. (*See* Dkt. 70 at 1–2.) Although those individuals attempted to refer the case to outside counsel, it appears that the MHS firm never received the emails. At a minimum, it is undisputed that the Allied Universal legal staff who sent the emails never received a response from MHS. But when faced with MHS's silence, Allied Universal's legal staff took no further action— for over a year and a half—until they were contacted by Plaintiff's counsel "demanding payment of the judgment." (Dkt. 70 at 2.) Defendants offer no explanation as to why their in-house legal staff did not contact their outside counsel by alternative means or did not otherwise attempt to monitor the docket in this case. That fact alone precludes any finding of good cause to vacate the default judgment.

Defendants offer several arguments to the contrary, but none is persuasive. Defendants first contend that their neglect was not willful: a condition they suggest, based on their reading of precedent, is necessary to support a default judgment. Even assuming Defendants' actions were not willful, however, does not require that this

judgment be vacated. *See Sullivan v. General Plumbing, Inc.*, 2007 WL 1030236, at *3 (N.D. Ill. Mar. 31, 2007) (refuting defendant's argument that "the proper concept to apply" under Rule 60(b)(1) "is one of 'willful neglect' [rather than] negligence."); *Robb v. Norfolk & Western Ry. Co.*, 122 F.3d 354, 359 (7th Cir. 1997) ("[W]e think it is clear that a trial court has discretion to consider the equities and then determine whether a missed filing deadline attributable to an attorney's negligence is (or is not) 'excusable neglect.' "). Defendants' attempt to include a scienter requirement before a default judgment can be sustained represents, in this Court's view, an overreading of the applicable standard. *See*, *e.g.*, *Jones*, 39 F.3d at 162 (party seeking to vacate a default judgment must show "something more compelling than ordinary lapses of diligence or simple neglect.").

Defendants also rely upon a district court decision setting forth a number of factors relevant to whether a party's failure to respond was excusable, including potential prejudice to the plaintiff, the length and effect of the delay, the reasons for the delay, and whether the movant acted in good faith. (Dkt. 70 at 4) (citing *Tjarksen v. Del Re*, 2005 WL 8177511, at *2 (N.D. Ill. Mar. 29, 2005)). Defendants contend that each of these factors supports their requested relief. But although Defendants' good faith can be presumed, the other *Tjarksen* factors cut the other way and thus do not compel a finding in Defendants' favor.

Defendants maintain (Dkt. 70 at 5) that vacating the default judgment would not prejudice Plaintiff. That is an overstatement. Even if the general preference is for cases to be resolved on the merits, Plaintiff would suffer at least some prejudice were

the Court to vacate the judgment and reopen the case. Among other things, Plaintiff would be required—based solely on Defendants' error—to endure further delay in the resolution of her case and to write off (along with her counsel) the time she already spent litigating this matter.

Defendants also contend that the "length of the delay is minimal and will not impede any further proceedings as this case has not proceeded past the complaint stage and because the parties remain available to participate in litigation." (Dkt. 70 at 5.) As suggested above, however, that assertion ignores the nontrivial devotion of resources by both Plaintiff and the Court in, among other steps, conducting a prove-up hearing on damages. Put another way, unlike other situations in which the devotion of resources was minimal, the Court here did not merely enter a ministerial default order and then conduct a simple calculation of damages. On the contrary, this matter has already required a material devotion of resources.

In any event, sunk costs are not the only consideration: delay is a concern too. Plaintiff filed the initial complaint in this case in October 2023, moved for entry of default in June 2024 (after the Court appointed a lawyer to represent Plaintiff), and moved for default judgment in July 2024 (which the Court granted in December 2024). (*See* Dkt. 65.) Defendants did not perceive their error and file a motion to vacate the judgment until July 2025. In view of Defendants being the cause of the delay, the equities do not favor them.

Defendants maintain at the last that their delay "was caused by circumstances entirely outside the reasonable control of Defendants or their counsel." (Dkt. 70 at 5.)

That assertion, the Court notes respectfully, is belied by the record: Allied Universal[1] *was* aware of the case, and Allied Universal's legal personnel *were* in reasonable control of the circumstances. Allied Universal could easily have contacted their chosen outside counsel (MHS) when they failed to receive a response to their repeated emails. If anything, the lack of response after the second email should have heightened Allied Universal's scrutiny, not caused it to wash its hands of the matter. It is not unreasonable to expect in-house legal personnel to sound the alarm and take additional steps when multiple emails to outside counsel have been ignored.

More broadly, parties have a duty to monitor the dockets of cases in which they are involved. *See, e.g., Snyder v. Barry Realty, Inc.*, 60 F. App'x 613, 615 (7th Cir. 2003) (nonprecedential disposition) (Rule 60(b) movants' attorneys "had a duty to monitor their case by regularly checking the court's docket."); *Griffiths v. Eggemeyer*, 2025 WL 1527360, at *3 (7th Cir. May 29, 2025) (party moving for relief under Rule 60(b)(1) "should have been monitoring the docket to ensure compliance with court orders."). And although that duty can be shifted to outside counsel acting in the capacity of an agent, that shift does not become effective until the party is satisfied that counsel is affirmatively on board. Allied Universal never took the final, necessary step of confirming their engagement of outside counsel; having not done so,

---

[1] All three Defendants jointly filed the motion to vacate. In Plaintiff's amended motion for default judgment, Plaintiff stated that "Defendant G4S Secure Solutions USA is a private security company. It was the entity that hired and employed Plaintiff and is now known as Allied Universal Security Services. . . . Universal Protection Service, LLC is also known as Allied Universal Security Services." (Dkt. 46 at 2.) Defendants have not submitted any facts to the contrary. (*See* Dkt. 70; Dkt. 78.) Accordingly, it appears that Allied Universal's awareness of the case may be imputed to the other Defendants.

Defendants cannot now shift the burden of litigating this case back onto Plaintiff (and the Court). These circumstances being within Defendants' reasonable control, it would be unsound to upend the final judgment issued in this case.

## IV.    CONCLUSION

Defendants' motion presents an unfortunate set of circumstances. To be sure, Defendants made an initial effort to address the case, and that effort was stymied by an apparent technological snafu. Defendants' neglect was not willful, and the legal world is replete with examples of greater and more culpable error. But at the same time, the finality of judgments must be respected. Precedent thus reinforces the rule that "something more compelling than ordinary lapses of diligence or simple neglect" must be shown to "justify disturbing a default judgment." *Jones*, 39 F.3d at 162. Defendants have not made that more compelling showing. Accordingly, the motion to vacate the default judgment is denied.

SO ORDERED in No. 23-cv-14605.

Date: January 27, 2026

_____
JOHN F. KNESS
United States District Judge